## FERNÁNDEZ *v.* HERNÁNDEZ.

APELACIÓN procedente de la Corte de Distrito de

San Juan.

No. 71. Resuelto en Marzo 30, 1905.

DIVORCIO.—El cónyuge que ejercita la acción trascendental de divorcio, que ha de romper el vínculo matrimonial y destruir un hogar, ha de estar limpio de toda culpa, debe ser una verdadera víctima que agotara todos los medios amistosos para detener el mal en su origen.

ID.—INJURIAS GRAVES.—Alegada la injuria como causa de divorcio, hay que probar que los hechos ó palabras que se estimen injuriosos constituyen una injuria real y verdadera, inferida con ánimo persistente y dañado, y no con espíritu exaltado momentáneamente.

ID.—La trascendencia del divorcio requiere como causal para su rompimiento, injurias públicas y notorias, que sean la resultante del odio y del rencor, mas no injurias leves, hijas de un acaloramiento del ánimo.

Los hechos están expresados en la opinión.

Abogados del apelante: Sres. *Díaz y Texidor.*

Abogado del apelado: Sr. *Acuña* (Eduardo.)

Abogado del Pueblo: Sr. *Rossy,* Fiscal.

EL JUEZ ASOCIADO SR. FIGUERAS, emitió la opinión del Tribunal. .

El once de Agosto del año próximo pasado de 1904 Don Serapio Francisco Fernández presentó demanda ante la Corte de Distrito de San Juan alegando como hecho capital que desde el doce de Junio de 1898 en que se casó con Da. María Dolores Demetria Hernández y Cepero ha venido ésta injuriándole en privado y en público, y últimamente el tres de Agosto de 1904 con el consiguiente escándalo de la vecindad é intervención de un policía y á presencia de numerosas personas, le llamó su esposa sinvergüenza, canalla, bandido é hijo de puta, sin haberle dado en absoluto motivo de ninguna especie para tales insultos.

En ese matrimonio contraído canónicamente se procrearon tres hijos nombrados Rafael, Pura y Celestino, quienes á la presentación de la demanda tenían tres años nueve meses, un año y diez meses y once meses de edad respectivamente.

Como se observa á primera vista se funda el divorcio en injurias graves inferidas por la esposa que es la causa 2a. del artículo 105 del antíguo Código Civil que equivale á la causa 4a. del 164 del Revisado, puesto que el primero reconoce como causal "los malos tratamientos de obra ó las injurias graves", y el segundo reconoce asímismo el "trato cruel ó las injurias graves." De modo que en este punto hay perfecta concordancia ó armonía entre ambos cuerpos legales.

La demanda de divorcio concluye con el pedimento de que quede disuelto y roto el vínculo matrimonial y que se declare á la vez que es la esposa la culpable de la ruptura para conseguir como consecuencia la custodia, cuidado y patria potestad en favor del demandante de los tres hijos del matrimonio á que anteriormente nos hemos referido.

La esposa demandada se opone al divorcio negando la certeza de esas injurias en todo tiempo y refiere lo que

ocurrió el 3 de Agosto de 1904 consistente en haber devuelto á su esposo un paquete de galletas arrojándolo sobre el mostrador de la tienda, hecho que interpretado erróneamente por su esposo le dió ocasión á que éste se lanzase sobre ella y la golpease, proceder que la produjo verdadera indignación y le arrancó la protesta expresada en alta voz de que "procedía incorrectamente", y que no tenía derecho á maltratarla, pero sin que profiriese ninguna de las frases que se le atribuyen. Esos hechos así expuestos en la contestación de la demanda, determinan su súplica de que se la declare sin lugar y subsistente en su consecuencia el vínculo matrimonial que la une al demandante.

La prueba suministrada para acreditar las injurias graves, es testifical y en primer término declara Da. Isabel López Cepero quien expone que es madre de la esposa demandada, que las relaciones de ésta con su esposo no han sido cordiales y que no han vivido en paz porque ella siempre ha sido celosa, no sabe si él ha dado motivos para esos disgustos que datan de hace cuatro años aunque afirma que se mostraba duro con ella, que por parte de la esposa había simples recriminaciones y conceptos injuriosos y su esposo la maltrataba y "cargaba la mano sobre ella y ella se lo aguantaba" y sufría los disgustos, que esto reconocía por causa los celos de ella y que nada sabe de lo ocurrido el 3 de Agosto de 1904 porque no estaba aquí.

En el momento de declarar se presenta una carta dirigida por esta señora á su hija fechada en New York el 18 de Agosto sin expresar el año, y en toda ella domina el cariño maternal dando juiciosos consejos á su hija á quien recrimina por sus celos, que supone infundados, y que contribuyen á tener aburrido al esposo que no puede trabajar cuando debieran ser ambos felices cuidando de sus hijos y viviendo en un hogar tranquilo.

Han declarado los testigos Asunción Burgos, María Morales, Julia Fernández, Ricardo Hernández, Juan Bel-

trán y Estanislao Rivera y todos están conformes en que hubo disgustos en el matrimonio y en que se profirieron por la esposa las palabras injuriosas que expresa la demanda y otras tan mal sonantes como las de chulo ó hijo de puta, pero también están conformes en que esas palabras en el momento y ocasión en que se pronunciaron por la esposa, reconocían por causa los celos de ella por más que no aseguren si tenían ó no justificación porque nada vieron por parte del marido que produjere en el ánimo de los declarantes la convicción de que éste tuviera relaciones ilícitas con ninguna otra mujer. Viene después la declaración del esposo y hace relación de los disgustos sufridos por los celos de su esposa lo mismo aquí que en México y la Habana, hasta venir á parar á las palabras injuriosas de la demanda que le han obligado á pedir el divorcio, toda vez que ella no tiene motivo para esos celos que justifiquen sus insultos.

Confiesa que después de presentada la demanda ha ido de noche á casa de su esposa retirándose de ella como á las nueve ó las diez pero sin que haya tenido con ella trato carnal. Pero viene después la esposa demandada y dice que todos los disgustos surgieron en el matrimonio desde que encontró á su esposo con una criada y que el tres de Agosto de 1904 le llamó sinvergüenza porque la maltrató con una silla por haberle tirado, en juego, unas galletas en el mostrador; que le dió ella parte á un policía pero que no quiso ir al cuarto de socorro, que su marido después de la demanda se ha quedado con ella muchas noches haciendo vida marital y que llegaba á la casa de noche como á las nueve ó las diez, que la engañó diciéndola que había retirado esta demanda y aún después de iniciado este juicio lo admitió en su casa porque siempre le prometía que retiraría la demanda.

Y cuando el Juez preguntó á la esposa en qué se fundaban esos celos, contestó:

"Porque una noche me lo encontré en la calle de la Fortaleza con una criada muy bonita que yo tenía, y otra noche en mi casa en el lecho de la criada, y fué tal la impresión que me causó que la leche se me secó en los pechos."

Después de terminadas las pruebas que en conjunto aprecia el Juez de la Corte de Distrito del Distrito de San Juan, formula la siguiente opinión:

"Habiéndose practicado toda la prueba en el presente caso la Corte está dispuesta para dictar su resolución ahora mismo. La causa que se ha alegado para solicitar el divorcio es la contenida en el número 4o. del artículo 164 del Código Civil ó sea la de injurias graves. Por la prueba practicada venimos en conocimiento de que entre los esposos Fernández-Hernández ha habido serios disgustos. En nuestra opinión la parte que solicita el divorcio debe estar completamente limpia y aquí se ha demostrado de una manera que no ha dejado dudas á la Corte que el origen de los discursos habidos en este matrimonio ha sido el hecho que de una manera gráfica nos narró la parte demandada cuando nos dijo que habiendo encontrado en cierta noche á su marido en su propio hogar en el lecho de una sirvienta fué tal la impresión que sintió que la leche se secó en sus pechos. Y desde ese momento es que surjen, es que nacen en el ánimo de la mujer esos celos tremendos que han dado origen á los disgustos posteriores. De suerte que no tenemos aquí perfectamente limpia á la parte demandante.

Además en nuestra opinión la injuria para que sea causa de divorcio tiene que ser una real y verdadera injuria, inferida con ánimo persistente y dañado, no con espíritu exaltado momentáneamente. El divorcio es un acto serio; disuelve un matrimonio, y su influencia se extiende no ya á los esposos, á los hijos, á la familia, sino á la sociedad toda. De ahí que deba serse exigente si preciso en la apreciación de las pruebas. Aquí en este caso no puede ocultarse que la mujer ha dirigido frases que pudieran estimarse como injurias contra el marido . ¿Pero se han demostrado perfectamente los móviles? Se ha comprobado el ánimo dañado y la intención deliberada de inferir una verdadera injuria? Nó á nuestro juicio. Seguramente las personas que hubieran oido las frases de la demandada en la escena culminante á que se refiere la demanda en vez de formar un mal concepto contra el marido, habrían pensado que se trataba de una mujer exaltada y celosa. De suerte que las injurias no habrían producido

el efecto de tales injurias. Por lo tanto creemos que es triste en verdad lo que ocurre al matrimonio Fernández-Hernández, pero no creemos que deba acudirse al divorcio para solucionar el problema. Deben ambos cónyuges dominar sus propias pasiones; el hombre teniendo calma y la mujer olvidando su resentimiento en beneficio del matrimonio y de sus hijos, y no pedir que el matrimonio se disuelva por completo. Debe cada cual poner de su parte lo necesario para que vuelva la paz. Apreciándose de la manera expresada la prueba por la Corte, estima que no se han cometido verdaderas injurias y que debe declararse sin lugar la demanda.''

Y luego se dictó la siguiente sentencia:

''Número 167.—Serapio Francisco Fernández Suárez.—Demandante vs. María Dolores Demetria Hernández Cepero.—Demandada. —Sobre divorcio.—Sentencia.—Hoy día nueve de Noviembre de 1904 y en Corte abierta se llamó este pleito para la vista por su orden de señalamiento y comparecieron las partes en persona y por sus abogados y anunciaron estar listas.—El Abogado de la parte demandante hizo sus alegatos á la Corte y acto seguido hizo lo propio el abogado de la demandada.—El abogado de la parte demandante entonces introdujo su prueba que fué practicada. Y por último los abogados de las partes informaron oralmente. Y la Corte, oídas las alegaciones, las pruebas y los informes es de opinión que los hechos y la ley están en contra del demandante y en tal virtud dicta sentencia declarando no haber lugar á decretar el divorcio solicitado, con las costas al actor, y regístrese ésta en el libro de sentencias de esta Corte.—Pronunciada en Corte abierta hoy nueve de Noviembre de 1904.—Registrada hoy 10 de Noviembre de 1904.—Certifico, Luis Méndez Vas, Secretario.—Emilio del Toro, Juez.''

Apeló el esposo Don Serapio Fernández y tanto él como su esposa comparecieron ante esta Corte Suprema por medio de sus abogados respectivos Díaz y Texidor y Don Eduardo Acuña, presentando el primero su alegato en el que minuciosamente analiza la prueba practicada que es favorable al divorcio, dice, y afirma que no puede darse á la declaración de la esposa demandada el alcance que le dá el Juez sentenciador porque es aislada y está contradicha por la prueba testifical.

El fiscal y la representación de la parte apelada sostienen por el contrario la justicia de la sentencia recurrida y en el acto de la vista expusieron oralmente las razones conducentes á su derecho.

Tiene razón el Juez sentenciador. El cónyuge que ejercita la acción trascendental de divorcio que ha de romper el vínculo matrimonial y destruir el hogar que nació por el mútuo amor y en donde existen hoy hijos inocentes, debe estar limpio de toda culpa, debe ser una verdadera víctima que agotó todos los medios amistosos para detener el mal en su orígen.

Pero cuando esto no sucede tiene el juzgador que meditar con serenidad de espíritu y pesar en todo lo que valgan las causas generadoras del rompimiento que se interesa.

Es de todo punto ingénua la declaración de la esposa demandada cuando refiere la impresión que le causó el encuentro de su marido con una criada, esa declaración no está aislada, como se asegura de contrario, porque todos los testigos suponen que los celos de la mujer son la causa de su indignación por más que nada afirmen acerca de la justificación de esos celos. Es claro que ella, esposa ofendida, no había de divulgar la causa de sus celos que sólo reveló al Tribunal que la requirió con ese objeto. Es este secreto que guarda cuidadosamente una esposa por que se creería ofendida al hacer público que su esposo la pospone por otra, tanto más cuanto que esa otra resulta ser su propia criada que está á nivel más bajo en la consideración social. No es pues extraño que ni su madre ni los testigos que han declarado conociesen la causa de esos celos á que se refieren.

Ahora bien, en ese estado de ánimo no es humano suponer que las palabras duras que en un momento dado brotasen de sus labios puedan calificarse con un carácter de gravedad incompatible con ese estado de espíritu. No se ha probado que haya en ella un desequilibrio cerebral,

hay que reconocer que la impulsaba la causa de los celos á que ella y los mismos testigos se refieren, y así las cosas esas injurias son cuando más leves, hijas de un acaloramiento del ánimo.

La trascendencia del divorcio requiere como causal para su rompimiento injurias públicas y notorias, pues como dice Q. Mucius Scévola, página 421 del tomo 2o.:

"La injuria leve, en la generalidad de los casos, es obra de un momento de pasión ó de arrebato. La injuria grave es casi siempre la determinante del odio ó de la malquerencia, y á mayor gravedad y frecuencia de la injuria, mayor y más reconcentrado el encono y más profundo el rencor."

¿ Y qué odio y qué rencor hay en esta esposa que después de presentada esta demanda recibe en su casa á su esposo de nueve á diez de la noche como ambos reconocen por más que la una afirme que hubo algunas noches contacto carnal y el otro lo niegue? Es lo cierto que esas visitas nocturnas aceptadas por parte de ella revelan que no hay ni hubo en su alma el encono y el rencor de que nos habla el ilustre Comentarista y por parte de él no puede decirse que le llevase á la casa de su esposa, siempre de noche, y á las mismas horas, el único deseo de gozar con las caricias de sus hijos que seguramente por su corta edad dormían en esas horas.

Parece lo más sencillo y natural suponer que ni la una ni el otro se guardaban ese rencor, ese profundo odio que se hubiera producido de haber tenido ella la intención de injuriarle gravemente y él al ser víctima de esos graves é injustificados insultos. Por todo lo expuesto estamos de acuerdo con la opinión del Juez de la Corte de San Juan y proponemos la confirmación de la sentencia que dictó en nueve de Noviembre de 1904 y que se impongan las costas al apelante.

*Confirmada.*

Jueces concurrentes: Sres. Presidente . Quiñones y Asociados Hernández, y MacLeary.

El Juez Asociado Sr. Wolf no formó Tribunal en la vista de este caso.